1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        13 Cr. 485 (CM)

5   FAOUZI JABER,

6              Defendant.

7   ------------------------------x

8                                       July 25, 2017
                                        1:00 p.m.
9
    Before:
10
                    HON. KATHARINE H. PARKER,
11
                                        Magistrate Judge
12
                        APPEARANCES
13
    JOON H. KIM
14       Acting United States Attorney for the
         Southern District of New York
15  GEORGE D. TURNER
         Assistant United States Attorney
16
    FEDERAL DEFENDERS OF NEW YORK
17       Attorneys for Defendant
    SABRINA P. SHROFF
18

19

20  Also present:  MARWAN ABDEL-RAHMAN, Arabic language interpreter

21

22

23

24

25

1          (Case called)

2          THE COURT:  Good afternoon.  Will counsel please state

3     their appearances for the record.

4          MR. TURNER:  Good afternoon, your Honor.  George

5     Turner for the government.

6          THE COURT:  Good afternoon.

7          MS. SHROFF:  Good afternoon, your Honor.  On behalf of

8     Mr. Jaber, who is seated to my right, Federal Defenders of New

9     York, by Sabrina Shroff.

10          THE COURT:  Good afternoon.

11          Good afternoon, Mr. Jaber.

12          THE DEFENDANT:  Good afternoon.

13          THE COURT:  I am Judge Parker, and I understand your

14     primary language is Arabic.  We have an Arabic interpreter here

15     today.  Are you able to hear and understand the interpreter?

16          THE DEFENDANT:  I can hear you without the headset.

17          THE COURT:  OK.

18          THE INTERPRETER:  Your Honor, could we have a minute

19     to take care of the equipment?

20          THE COURT:  All right.

21          THE DEFENDANT:  I can hear you.

22          THE COURT:  So we have now corrected the headset, and

23     you can now hear the interpreter clearly; is that right?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Mr. Jaber, I understand you wish to plead

1    guilty to Count Three of the indictment against you, which

2    charges you with conspiracy to provide material support or

3    resources to a foreign terrorist organization, in violation of

4    Title 18 of the United States Code, Section 2339B; is that

5    right?

6                THE DEFENDANT:  Yes.

7                THE COURT:  Before we get started, I am going to ask

8    the courtroom deputy to place you under oath.

9                Could you please stand.

10               (Defendant sworn)

11               THE COURT:  You have now been placed under oath.  This

12   means that any statements you make here may be used against you

13   by the government in a prosecution for perjury or for making

14   false statements.

15               Do you understand this?

16               THE DEFENDANT:  Yes.

17               THE COURT:  Do you understand that giving false

18   testimony here today is itself a federal crime?

19               THE DEFENDANT:  Yes.

20               THE COURT:  I have before me a consent to proceed

21   before a United States magistrate judge on a felony plea

22   allocution that you have signed.

23               What this form says is that you know you have the

24   right to have your plea taken by a United States district

25   judge, but you are agreeing to have the plea taken by a United

H7P8JABP

1    States magistrate judge, such as myself.

2            As a magistrate judge, I have the authority to take

3    your plea, with your consent, and you will still be entitled to

4    all of the same rights and protections as if you were before a

5    district judge; and, among other things, if you are found

6    guilty, you will be sentenced by a district judge.

7            Before you signed this form, did your lawyer explain

8    it to you with the aid of an interpreter?

9            THE DEFENDANT:  Yes.

10            THE COURT:  Did you sign this form voluntarily?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Do you still wish to proceed with your

13    plea before a United States magistrate judge today?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Your consent is accepted.

16            I would like to explain a little bit more about the

17    proceeding today.

18            I am going to ask you various questions, some are

19    personal in nature and others are about the crime to which you

20    wish to plead guilty.

21            I am also going to review various rights you have and

22    will be giving up by pleading guilty.

23            The purpose of these questions is to make sure that

24    you understand your rights and to make sure that you are

25    voluntarily pleading guilty of your own free will and because

1  you are in fact guilty of the crime set forth in Count Three of

2  the indictment and not for some other reason.

3           Do you understand what I have said?

4           THE DEFENDANT:  Yes.

5           THE COURT:  If you don't understand any of my

6  questions, or if you want at any time to consult with your

7  lawyer, please say so, and we will stop and permit you time so

8  that we can clarify or explain the question.  It's important

9  that you understand every question before you answer it.

10          THE DEFENDANT:  Yes.

11          THE COURT:  What is your full name?

12          THE DEFENDANT:  Faouzi Abdulnehum Jaber.

13          THE COURT:  Mr. Jaber, how old are you?

14          THE DEFENDANT:  After 11 days I will turn 62 and start

15  my 63rd year.

16          THE COURT:  Are you a United States citizen?

17          THE DEFENDANT:  No.

18          THE COURT:  I ask this question because pleading

19  guilty can have serious immigration consequences for those who

20  are not United States citizens.

21          Can you read and write in Arabic?

22          THE DEFENDANT:  Yes.

23          THE COURT:  How far did you go in school?

24          THE DEFENDANT:  Second year in high school.

25          THE COURT:  Are you currently or have you recently

1    been under the care of a doctor, psychiatrist or psychologist

2    for any reason?

3            THE DEFENDANT:  I'm constantly under the care of

4    medical doctors and psychiatrists.

5            MS. SHROFF:  Your Honor, may I just interrupt and give

6    to the Court the medications, in case you want it, or I can

7    give it to the court reporter.  Mr. Jaber is on a slew of

8    medications.

9            THE COURT:  Yes.  I would like to understand what

10   medications they are and whether they impact his ability to

11   understand the proceedings today.

12           MS. SHROFF:  So may I answer the first question and

13   the second one he can?

14           THE COURT:  Yes.

15           MS. SHROFF:  He takes medication for blood pressure,

16   heart medication and prostate issues.

17           He gets 5 milligrams of amlodipine once a day.

18           He gets 5 milligrams of lisinopril twice a day.

19           He gets 10.4 milligrams three times a day of something

20   called tamsulosin.

21           He gets 10 milligrams of isosorbide twice a day.

22           He gets 81 milligrams of aspirin, as I understand it,

23   six times a day.

24           He gets 10 milligrams of atorvastatin.

25           He gets 75 milligrams of clopidogrel bisulfate.  I

1  believe he gets that twice a day.

2  　　　　　Then he also gets 0.4 milligrams of nitroglycerin.

3  　　　　　Then he gets 25 milligrams of atenolol.

4  　　　　　THE COURT:  Will counsel please hand that up to me for

5  the record so I can just read that.

6  　　　　　MS. SHROFF:  Sure.

7  　　　　　THE COURT:  Mr. Jaber, the medications that you are

8  taking are for blood pressure, heart problems, and prostate

9  problems; is that correct?

10 　　　　　THE DEFENDANT:  Yes.

11 　　　　　THE COURT:  Are they for any other medical condition?

12 　　　　　THE DEFENDANT:  No, just those.  And I have been

13 taking them all my life, all my life.

14 　　　　　THE COURT:  Do any of these medications, alone or in

15 combination, interfere with your ability to comprehend what is

16 going on at today's proceeding?

17 　　　　　THE DEFENDANT:  No.  I'm comprehending everything.

18 　　　　　THE COURT:  Thank you.

19 　　　　　Do you have any condition that affects your ability to

20 see or hear?

21 　　　　　THE DEFENDANT:  Yes.  I have some difficulty hearing,

22 and I am nearsighted.

23 　　　　　THE COURT:  I see that you are wearing glasses.  You

24 can see what is going on in this proceeding today; is that

25 correct?

H7P8JABP

1          THE DEFENDANT:  This is a result of high blood

2     pressure.

3          THE COURT:  But you can see what is going on at

4     today's proceeding; is that right?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And notwithstanding your hearing problems,

7     are you able to hear clearly what is going on in today's

8     proceeding?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Do you have any condition that affects

11     your ability to think, to understand, or to make judgments or

12     decisions on your own behalf?

13          THE DEFENDANT:  No.  Today I'm fine, but some days I

14     do have problems.

15          THE COURT:  What is the nature of the problem that you

16     have in thinking or understanding?

17          THE DEFENDANT:  When I'm upset.

18          THE COURT:  Is this related to any medical condition?

19          THE DEFENDANT:  No, no.

20          THE COURT:  So are you able to understand this

21     proceeding, what we are talking about here?

22          THE DEFENDANT:  Yes, very well.

23          THE COURT:  Is your mind clear today?

24          THE DEFENDANT:  Very much so.

25          THE COURT:  You understand what is happening in this

1  proceeding today?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Have you ever been hospitalized for any

4  mental illness?

5           THE DEFENDANT:  Yes, in Lebanon.

6           THE COURT:  What kind of mental illness were you

7  hospitalized for?

8           THE DEFENDANT:  Family problems and infidelity,

9  marriage infidelity.

10          THE COURT:  Were you given a psychiatric diagnosis?

11          THE DEFENDANT:  Yes.

12          THE COURT:  What was that diagnosis?

13          THE DEFENDANT:  My attorney is going to receive a full

14  report within a couple of days that will be mailed to her.

15          MS. SHROFF:  He was previously diagnosed with

16  depression; he received treatment for depression and it was a

17  while ago.

18          THE COURT:  I was just going to ask, Mr. Jaber, when

19  was this treatment that you received?

20          THE DEFENDANT:  Between 1993 and 2013.

21          THE COURT:  Was that treatment helpful to you?

22          THE DEFENDANT:  Yeah, well.

23          THE COURT:  Did you conclude treatment for that mental

24  condition?

25          THE DEFENDANT:  My mental problems caused me heart

1    problems and other medical problems.

2              MS. SHROFF:  Your Honor, may I just have a second?

3              THE COURT:  Yes.

4              (Pause)

5              MS. SHROFF:  Thank you, your Honor.

6              THE COURT:  Mr. Jaber, what I am trying to determine

7    is whether or not you had or have any mental illness that would

8    prevent you from understanding the nature of today's proceeding

9    and understanding what you are doing here today.

10             Your prior diagnosis for any mental illness, does that

11   prevent you from understanding what is happening today?

12             THE DEFENDANT:  Today I understand 100 percent

13   everything that has been taking place.

14             THE COURT:  Have you ever been treated for drug or

15   alcohol addiction?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Are you presently, as you sit here today,

18   under the influence of any mind-altering drug or alcohol?

19             THE DEFENDANT:  No.  Today I'm fine.

20             THE COURT:  Does the government have any objections to

21   Mr. Jaber's competence to plead at this time?

22             MR. TURNER:  No, your Honor.

23             THE COURT:  Ms. Shroff, do you have any objections or

24   concerns about your client's competence to plead at this time?

25             MS. SHROFF:  No, your Honor.

H7P8JABP

1    THE COURT:  Mr. Jaber, have you seen a copy of the

2   indictment that contains the charges against you?

3    THE DEFENDANT:  Yes.

4    THE COURT:  Have you read it with the assistance of an

5   interpreter?

6    THE DEFENDANT:  Yes.

7    THE COURT:  Have you had the opportunity to review the

8   indictment with your attorney?

9    THE DEFENDANT:  Yes.

10   THE COURT:  Do you understand what the indictment says

11  that you did?

12   THE DEFENDANT:  Yes.

13   THE COURT:  Have you had enough time to talk with your

14  attorney about your case and how you wish to plead?

15   THE DEFENDANT:  Yes.  And my attorney has been taking

16  good care of me.

17   THE COURT:  I was just going to ask you if you are

18  satisfied with your attorney's representation.  Are you?

19   THE DEFENDANT:  Very much so.

20   THE COURT:  Has your counsel told you the consequences

21  of pleading guilty, including any immigration consequences?

22   THE DEFENDANT:  Yes.

23   THE COURT:  I am now going to explain certain

24  constitutional rights that you have.  These are rights that you

25  will be giving up if you enter a plea of guilty.  Please listen

1   carefully to what I am about to say, and again, if you don't

2   understand something, stop me, and I will explain it more

3   fully.  OK?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Under the Constitution and laws of the

6   United States, you have a right to plead not guilty to the

7   charges contained in the indictment.

8              Do you understand this?

9              THE DEFENDANT:  Yes.

10             THE COURT:  If you pled not guilty, you would be

11  entitled under the Constitution to a speedy and public trial by

12  a jury of those charges.

13             At that trial, you would be presumed innocent and the

14  government would be required to prove you guilty beyond a

15  reasonable doubt before you could be found guilty, and you

16  could not be convicted unless a jury of 12 people agreed

17  unanimously that you are guilty beyond a reasonable doubt.

18             Do you understand this?

19             THE DEFENDANT:  Yes.

20             THE COURT:  If you decided to go to trial, at the

21  trial and at every stage of your case, you would have the right

22  to be represented by an attorney, and if you could not afford

23  one, an attorney would be appointed to represent you at the

24  government's expense.  Even if you retained private defense

25  counsel, if you ran out of money, an attorney would be

H7P8JABP

1    appointed to continue to represent you.  You would be entitled

2    to an attorney all the way through trial and not just for a

3    guilty plea.  So your decision to plead guilty should not

4    depend on whether you can afford to hire an attorney.

5            Do you understand this?

6            THE DEFENDANT:  Yes.

7            THE COURT:  During a trial, the witnesses for the

8    prosecution would have to come to court and testify in your

9    presence, where you could see and hear them, and your lawyer

10   could cross-examine those witnesses.  If you wanted, your

11   lawyer could offer evidence on your behalf.  You would be able

12   to use the court's power to compel witnesses to come to court

13   to testify in your defense even if they did not want to come.

14           Do you understand this?

15           THE DEFENDANT:  Yes.

16           THE COURT:  At a trial, you would have the right to

17   testify in your own defense, if you wanted to.  But you would

18   also have the right not to testify, and if you chose not to

19   testify, that could not be used against you in any way.  No

20   inference or suggestion of guilt would be permitted from the

21   fact that you did not testify.

22           Do you understand this?

23           THE DEFENDANT:  Yes.

24           THE COURT:  If you were convicted at trial, you would

25   have the right to appeal that verdict to a higher court.

1    Do you understand this?

2    THE DEFENDANT:  Yes.

3    THE COURT:  As I said before, you have the right to

4    plead not guilty.  Even right now, even as you sit here today

5    for purposes of entering your guilty plea, you have the right

6    to change your mind, persist in your not guilty plea and go to

7    trial.  But if you do plead guilty, and if the court accepts

8    your plea, you will give up the right to a trial and to all the

9    other rights that go with it that I have just described.

10    If you plead guilty, there will be no jury trial.  All

11    that will remain to be done will be to impose a sentence.  You

12    and the government will have a chance to make arguments about

13    what sentence you should get, but there will not be any further

14    trial to determine if you are guilty or not guilty of the

15    charges to which you pled guilty.

16    Do you understand what I have just said?

17    THE DEFENDANT:  Yes.

18    THE COURT:  Do you understand the decision as to the

19    appropriate sentence in your case will be entirely up to the

20    sentencing judge, and that's Judge McMahon, and that she will

21    be limited only by what the law requires?

22    Do you understand this?

23    THE DEFENDANT:  Yes.

24    THE COURT:  So this means that even if you are

25    surprised or disappointed by your sentence, you will still be

1    bound by your guilty plea and you will not be able to withdraw

2    it.

3         Do you understand?

4         THE DEFENDANT:  Yes.

5         THE COURT:  Finally, if you do plead guilty, you are

6    also giving up the right not to incriminate yourself, and I

7    will ask you questions in a moment about what you did in order

8    to satisfy myself that you are actually guilty.  By pleading

9    guilty, you will be admitting to your factual as well as your

10   legal guilt.

11        Do you understand this?

12        THE DEFENDANT:  Yes.

13        THE COURT:  I am now going to review the charges

14   against you and review the consequences of pleading guilty.

15        Count Three of the indictment charges that you

16   conspired with others to provide material support or resources

17   to a foreign terrorist organization, the Fuerzas Armadas

18   Revolucionarias de Colombia, the FARC, in violation of Title 18

19   of the United States Code, Section 2339B.

20        I am going to ask the government, Mr. Turner, to state

21   the elements of this charge.  The elements are the things that

22   the government would have to prove beyond a reasonable doubt if

23   you went to trial.

24        Mr. Turner.

25        MR. TURNER:  Yes, your Honor.

1          The elements of the offense charged in Count Three of

2     the superseding indictment are:

3          First, that the defendant entered into an agreement to

4     provide material support or resources to a designated foreign

5     terrorist organization;

6          Second, that the defendant knew that the organization

7     was designated as a foreign terrorist organization, or that the

8     organization had engaged or was engaging in terrorist activity

9     or terrorism; and

10          Third, that at least one of the jurisdictional

11     requirements, which are set forth in subsection (d) of Section

12     2339B, is met.

13          The government would also be required to establish

14     venue in the Southern District of New York by a preponderance

15     of the evidence.

16          THE COURT:  Thank you.

17          Mr. Jaber, I am now going to tell you the maximum

18     possible penalties you face by pleading guilty to Count Three

19     of the indictment.  The maximum means the most that could

20     possibly be imposed.  It does not mean that is what you

21     necessarily would receive, but by pleading guilty, you are

22     exposing yourself to the possibility of receiving any

23     combination of punishments up to the maximum that I am about to

24     describe.

25          Do you understand?

1          THE DEFENDANT:  Yes.

2          THE COURT:  The maximum term of imprisonment for the

3     crime charged in Count Three is 15 years, which could be

4     followed by up to a lifetime of supervised release.

5          Supervised release means that after you are released

6     from prison, you may be subject to the supervision of the

7     probation department.  If you are placed on supervised release

8     and thereafter violate any condition of that supervised

9     release, the district judge can revoke the term of supervised

10    release previously imposed and return you to prison without

11    giving you any credit for time previously served on

12    post-release supervision.

13         In addition to these restrictions on your liberty, the

14    maximum possible punishment for the crime charged in Count

15    Three also includes financial penalties.

16         The maximum allowable fine is $250,000, twice the

17    gross pecuniary gain derived from the offense or twice the

18    gross pecuniary loss to persons other than the defendant as a

19    result of the offense, whichever is greatest.

20         The court also has authority to require you to pay

21    restitution to any victims of the crime in an amount the court

22    decides is required to compensate them for any injuries.

23         In addition, by pleading guilty, you will admit to the

24    forfeiture allegations in the indictment and agree to forfeit

25    any and all monetary proceeds you obtained from the crime to

H7P8JABP

1   which you plead guilty, as well as any property used or

2   intended to be used in connection with the crime.  Forfeiture

3   of this money and property is in addition to any fine,

4   restitution, cost of imprisonment, or other penalty the court

5   may impose upon you.

6          Finally, the court is required to impose a mandatory

7   special assessment, or fine, of $100.

8          Because you are not a citizen of the United States,

9   your guilty plea may also have adverse consequences for your

10  ability to remain in or return to the United States, including

11  removal, deportation, denial of citizenship, and denial of

12  admission to the United States in the future.

13         Do you understand that your removal or deportation may

14  be mandatory?

15         THE DEFENDANT:  Yes.

16         THE COURT:  If that does happen, you will still be

17  bound by your guilty plea, that is, you will not be able to

18  withdraw it, regardless of any advice you have received from

19  your counsel or others regarding the immigration consequences

20  of your plea.

21         Do you understand this?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you understand the charges against you

24  and the consequences of pleading guilty?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand that if you enter a

2    guilty plea, you will not be able to withdraw this plea, and

3    the only remaining step in the case will be sentencing?

4          THE DEFENDANT:  Yes.  Someone who admits guilt will

5    never repeat it.

6          THE COURT:  I am glad that you are agreeing that you

7    won't repeat any criminal activity.

8          Do you understand that the decision as to the

9    appropriate sentence will be entirely up to the sentencing

10   judge and that she will be limited by only what the law

11   requires?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Do you understand that even if you are

14   surprised or disappointed by your sentence, you will still be

15   bound by your guilty plea?

16         THE DEFENDANT:  I would like to elaborate a bit on

17   answering this question.

18         I had requested to be deported from Prague and handed

19   to the American authorities so that I could admit my guilt.  I

20   was the only defendant who requested to be deported here, and

21   that would be found in the discovery; there will be a letter to

22   that effect in the discovery.  I never evaded acceptance of

23   responsibility because I had never committed a crime in the

24   past and will never commit a crime in the future.

25         (Pause)

1          MS. SHROFF:  Thank you, your Honor.

2          THE COURT:  Has anyone threatened you or coerced you

3     in any way or tried to get you to plead guilty?

4          THE DEFENDANT:  No.

5          THE COURT:  Now, I understand that there is a written

6     plea agreement.

7          I have the original plea agreement that you signed,

8     Mr. Jaber.  Did you read this agreement before you signed it?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Did you have the aid of an interpreter

11     when reviewing the agreement?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Do you understand its terms?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Did you discuss it with your attorney

16     before you signed it?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Did your attorney explain to you all of

19     the terms and conditions of the plea agreement with the aid of

20     interpretation?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Apart from what is contained in the plea

23     agreement, have any promises been made to you in order to get

24     you to plead guilty?

25          THE DEFENDANT:  No.

H7P8JABP

1          THE COURT:  Now, it appears that the government and

2     you have reached an agreement regarding the appropriate

3     calculation of your sentence under a part of the United States

4     law known as the sentencing guidelines.  The plea agreement is

5     that the appropriate guideline sentencing range is 180 months

6     of imprisonment and a fine range of $25,000 to $250,000.

7          Do you understand this?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Under the plea agreement, neither you nor

10    the government is allowed to argue to the sentencing judge for

11    a calculation that is different from the one in the plea

12    agreement.  But I must advise you that the court is not bound

13    by the recommendations and calculations in the plea agreement

14    and that the district judge will be free to do, and in fact is

15    obliged to do, her own calculation of the appropriate

16    sentencing range in your case, which may result in a sentencing

17    range that differs from the one in the plea agreement.

18         Do you understand what I have just said?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Do you understand that the district judge

21    may reject the recommendations of the prosecutor and

22    calculations in the plea agreement and could impose a more

23    severe sentence than you expect, without permitting you to

24    withdraw your plea of guilty?

25         THE DEFENDANT:  Yes.

H7P8JABP

1          THE COURT:  In determining the appropriate sentence,

2     the district judge will consider the sentencing guidelines,

3     possible departures under those guidelines, and the factors set

4     forth in Title 18 of the United States Code, 3553(a).

5          In addition, the court will consider a presentence

6     report prepared by the probation department in advance of your

7     sentencing.  Before you are sentenced, you and the government

8     will have an opportunity to challenge the facts in the

9     probation report.

10          Ultimately, the district judge will determine the

11     sentence for you, based on all of the factors I have explained,

12     and it may be more severe, as I said, than you expect, but you

13     will still not be able to withdraw your guilty plea.

14          Do you understand this?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you understand that under the terms of

17     the plea agreement, as long as the district judge sentences you

18     to a prison term of no longer than 180 months, you are giving

19     up your right to challenge your sentence, whether by direct

20     appeal, collateral attack, writ of habeas corpus or otherwise?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you understand that you are giving up

23     your right to challenge any term of supervised release imposed

24     by the court up to the lifetime maximum I told you about

25     earlier, whether by direct appeal, collateral attack, writ of

1    habeas corpus or otherwise?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you understand that the plea agreement

4    says that you cannot appeal any fine of $250,000 or less, and

5    that you cannot appeal any order of forfeiture or restitution,

6    whether by direct appeal, collateral attack, habeas corpus or

7    otherwise?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Under the plea agreement, the U.S.

10   attorney is agreeing that it will not prosecute you further

11   criminally, except for criminal tax violations, for

12   participation in a conspiracy, as charged in Count Three of the

13   indictment.  However, the plea agreement does not bar the

14   government from using factual information about your conduct as

15   a predicate act or on the basis for a sentencing enhancement in

16   a subsequent prosecution.

17             In addition, at the time of sentencing, the government

18   will move to dismiss any open counts against you.  In return,

19   you are agreeing, with respect to any and all dismissed

20   charges, that you are not a prevailing party, within the

21   meaning of the Hyde Amendment, and will not file any claim

22   under that law to seek attorneys' fees for bringing the

23   dismissed charges against you.

24             Do you understand this?

25             THE DEFENDANT:  Yes.

H7P8JABP

1          THE COURT:  Mr. Turner, in the plea agreement, it says

2     that Mr. Jaber cannot withdraw his plea even if he later learns

3     that the government withheld exculpatory material from him and

4     his counsel.  Has the government withheld any such material?

5          MR. TURNER:  No, your Honor.

6          THE COURT:  Mr. Jaber, do you understand that under

7     the terms of the plea agreement, even if you later learn that

8     the government withheld from your counsel certain information

9     that would have been helpful to you in defending yourself at

10     trial, you will not be able to complain about that or withdraw

11     your guilty plea on that basis?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Have you discussed this with your counsel

14     and do you understand what this means?

15          THE DEFENDANT:  Yes.

16          THE COURT:  The plea agreement also contains some

17     other provisions about arguments that you and the government

18     may make at the time of sentencing or upon discovery of new or

19     different information.  Have you had an opportunity to discuss

20     all of these provisions of the plea agreement with your

21     attorney?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Ms. Shroff, are there any other provisions

24     of the plea agreement that you would like me to go over with

25     your client?

H7P8JABP

1      MS. SHROFF:  No, your Honor.  We reviewed the plea

2   agreement thoroughly and provided Mr. Jaber with a copy.  So I

3   think he has all the information.

4      THE COURT:  Mr. Turner, does the government want me to

5   review any additional terms of the plea agreement with Mr.

6   Jaber?

7      MR. TURNER:  No, your Honor.

8      THE COURT:  Mr. Jaber, have any promises been made to

9   you concerning the actual sentence you will receive to

10  influence you to plead guilty?

11     THE DEFENDANT:  No.

12     THE COURT:  Again, besides the plea agreement, have

13  any promises been made to influence you to plead guilty?

14     THE DEFENDANT:  No.

15     THE COURT:  Now that you have been advised of the

16  charges against you, the possible penalties you face, and the

17  rights you are giving up, is it still your intention to plead

18  guilty to Count Three of the indictment?

19     THE DEFENDANT:  Yes.

20     THE COURT:  Is your plea voluntary and made of your

21  own free will?

22     THE DEFENDANT:  Certainly.

23     THE COURT:  With respect to Count Three, how do you

24  plead, guilty or not guilty?

25     THE DEFENDANT:  I am guilty.

1    THE COURT:  Tell me in your own words what you did

2  that makes you guilty of the crime charged in Count Three.

3    THE DEFENDANT:  I introduced Fayad to them in his

4  capacity as a weapons merchant and I expect to get a

5  commission.

6    I had an agreement with other persons who told me that

7  FARC was a terrorist organization and that they were to receive

8  weapons, and I introduced Fayad to them for that purpose.  I

9  was going to get a commission, as I said before.

10    THE COURT:  So just to be clear, you entered into an

11  agreement with someone else to help provide support or

12  resources to FARC; is that correct?

13    THE DEFENDANT:  That's correct.

14    THE COURT:  Is it also correct that you knew FARC was

15  a terrorist organization, or had been designated as a terrorist

16  organization, at the time you entered into this agreement?

17    THE DEFENDANT:  Yes.

18    THE COURT:  Where were you when you entered into this

19  agreement?

20    THE DEFENDANT:  In Ghana.

21    THE COURT:  Did you understand that any of the conduct

22  would impact or occur in the United States?

23    THE DEFENDANT:  Yes.

24    THE COURT:  Ms. Shroff, are you contesting venue in

25  the Southern District of New York?

1          MS. SHROFF:  No, your Honor.

2          THE COURT:  Mr. Jaber, I see that you have some notes

3    in front of you.  Are those your own words?  What you have told

4    me, are those your own words about what you have done?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Did you know at the time that you engaged

7    in this conduct that it was wrong and against the law?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Ms. Shroff, do you believe there is a

10   sufficient factual predicate for a guilty plea?

11         MS. SHROFF:  I do, your Honor.

12         THE COURT:  Are there any other questions that you

13   would like me to ask your client?

14         MS. SHROFF:  No, your Honor.

15         THE COURT:  Do you know of any defense that would

16   prevail at trial or other reason why your client should not be

17   permitted to plead guilty?

18         MS. SHROFF:  No, your Honor.

19         THE COURT:  Thank you.

20         Mr. Turner, do you believe there is a sufficient

21   factual predicate for a guilty plea?

22         MR. TURNER:  I do, your Honor.

23         THE COURT:  Are there any additional questions that

24   you would like me to ask the defendant?

25         MR. TURNER:  No, your Honor.

1          THE COURT:  Does the government believe that it would

2     be able to prove guilt beyond a reasonable doubt?

3          MR. TURNER:  Yes, your Honor.

4          THE COURT:  Would you like to make a proffer?

5          MR. TURNER:  Thank you, your Honor.

6          Your Honor, the government's proof in this case

7     includes, among other evidence, audio and video recordings of

8     meetings involving the defendant, co-conspirators and

9     confidential sources working for the DEA.  It also includes

10    reported phone calls as well as text messages involving the

11    defendant, co-conspirators, and those DEA confidential sources,

12    search warrant returns for e-mail accounts used by the

13    defendant and co-conspirators, the contents of electronic

14    devices that were seized from the defendant and co-conspirators

15    at the time of arrest, documentary evidence, including wire

16    transfer and bank account records, as well as witness

17    testimony, including both law enforcement witnesses as well as

18    DEA confidential sources.

19         If this matter were to have proceeded to trial, the

20    government would prove, using that evidence, that between 2012

21    and 2014, the defendant engaged in a series of meetings in

22    locations, including Accra, Ghana, with individuals who

23    identified themselves as representatives and associates of the

24    FARC, but who were, in fact, DEA confidential sources.  The

25    evidence would show that the FARC has been designated as a

1  foreign terrorist organization by the U.S. Secretary of State

2  since 1997.

3       The evidence would further show that in the course of

4  those meetings, which were both audio and video recorded, the

5  defendant and two associates, a weapons trafficker based in the

6  Ukraine and a narcotics trafficker based in West Africa, agreed

7  to provide certain materials and services to the FARC; the

8  defendant and one associate agreed to supply weapons, including

9  surface-to-air missiles, for use by the FARC; and the defendant

10 agreed with another associate to assist the FARC with the

11 transportation and storage of cocaine, as well as with the

12 laundering of cocaine proceeds, including moving those proceeds

13 to a bank account in New York.

14      Finally, the evidence would show that after his arrest

15 the defendant was extradited and was first brought to the

16 Southern District of New York, with respect to venue as well as

17 jurisdiction.

18      Finally, Judge, the evidence would show that the

19 defendant acted knowingly and intentionally and that he did

20 know that what he was doing was unlawful.

21      THE COURT:  Thank you, Mr. Turner.

22      On the basis of, Mr. Jaber, your responses to my

23 questions and my observations of your demeanor, I find that you

24 are competent to enter a guilty plea; I am satisfied that you

25 understand your rights, including your right to go to trial,

1    that you are aware of the consequences of your plea, including

2    the sentence that may be imposed, and that you are voluntarily

3    pleading guilty, and that you have admitted that you are guilty

4    as charged in Count Three of the indictment; and for this

5    reason, I will recommend that the district judge accept your

6    plea.

7          Mr. Turner, will the government please order a copy of

8    the transcript and submit it to Judge McMahon together with any

9    additional paperwork so she may act on my recommendation?

10         MR. TURNER:  Yes, Judge.

11         THE COURT:  Has Judge McMahon set a sentencing date?

12         MR. TURNER:  She has, your Honor.  Judge McMahon set

13   November 8 at 4 p.m. as the sentencing date.

14         THE COURT:  I will also direct that a presentence

15   report be prepared.

16         Mr. Turner, can you deliver a case summary within 14

17   days?

18         MR. TURNER:  Yes, your Honor.

19         THE COURT:  Ms. Shroff, will you be able to meet with

20   your client and probation within the next two weeks or so?

21         MS. SHROFF:  Yes, your Honor.

22         THE COURT:  Are there any other items that the

23   government would like to raise at this time?

24         MR. TURNER:  No, your Honor.

25         THE COURT:  Ms. Shroff, anything else that you would

1    like to raise at this time?

2              MS. SHROFF:  Your Honor, may I just have a second?

3              Your Honor, I will follow up with a letter to Judge

4    McMahon, but because Mr. Jaber has entered a guilty plea,

5    sometimes the marshals move him; and given that he is in the

6    chronic care unit at MCC and he takes a whole slew of

7    medications, I am just going to request on the record that if

8    government counsel can assist us in keeping Mr. Jaber at the

9    MCC, that he do so.

10             Thank you.

11             THE COURT:  Mr. Turner, does the government want to

12   respond?

13             MR. TURNER:  Your Honor, perhaps it would make sense

14   for the government to speak with defense counsel about the

15   request, and to the extent the parties are not on the same

16   page, a letter can be submitted to the district judge.

17             THE COURT:  All right.  What I would direct is that,

18   to the extent possible, that the government take into

19   consideration the care that Mr. Jaber is receiving so that he

20   can have continuity of care to the greatest extent possible.

21             MR. TURNER:  Yes, your Honor.

22             THE COURT:  Thank you.  Anything else?

23             MS. SHROFF:  No, your Honor.  Thank you.

24             THE COURT:  Have a good afternoon.

25             (Adjourned)