UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

UNITED STATES OF AMERICA

V.

FAOUZI JABER,

Defendant.

---------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/25/20

S1 13 CR 485 (CM)

DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

McMahon, C.J.:

Faouzi Jaber pleaded guilty to conspiring to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B, and was sentenced to 15 years' imprisonment. Jaber has served about half of his sentence—his projected release date is January 15, 2027.

Before the Court is Jaber's motion for compassionate release, asking to be resentenced to time served, and released to commence his term of supervised release, or sent to immigration custody to await deportation.[1] Def. Memo at 1. Jaber claims that (1) he has numerous health issues including coronary artery disease, hypertension, and depression, that places him at high risk of suffering a severe outcome should he become infected with COVID-19, and (2)

---

[1] If Jaber were released he would not be commencing any term of supervised release. The Court declined to impose a term of supervised release based on the near certainty that after Jaber completed his 15-years' sentence of incarceration, he would be immediately transferred from BOP custody to Immigration and Customs Enforcement custody, to be deported to his native Ivory Coast.

1

conditions at FCI Coleman-Medium (where Jaber is currently being held) create an ideal environment for the transmission of COVID-19. *Id*. at 5. Jaber claims that "his detention at the FCI Coleman-Medium has become tantamount to a cruel and potentially health-threatening or life-threatening punishment." *Id*.

Jaber asks in the alternative, that if both compassionate release and deportation are denied, that the Court order/recommend that he be granted a furlough pursuant to 18 U.S.C. § 3622 and 28 U.S.C. § 994(a)(2), until the current COVID-19 public health crisis has ended. *Id*. at 5.

The Government opposes the motion arguing that Jaber engaged in extremely serious criminal conduct, the sentencing factors set forth at 18 U.S.C. § 3553(a) continue to support the 15-year sentence, and he has served less than half of that sentence.

The motion is denied.

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. Once such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a

2

defendant who has not "fully exhausted all administrative rights," the district court "may not"
modify his term of imprisonment.

Once a defendant has exhausted administrative remedies, with respect to the substantive
determination, and in addition the statutory requirement that the Court consider the factors set
forth in Section 3553(a), the United States Sentencing Guidelines contain a provision, Section
1B1.13, applicable to motions for sentencing reductions pursuant Section 3582(c)(1)(A). That
section provides, in relevant part, that a reduction in sentence may be appropriate if the Court
determines that--

    (1)    (A) Extraordinary and compelling reasons warrant the reduction; or

> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years
> in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the
> offense or offenses for which the defendant is imprisoned;

    (2)    The defendant is not a danger to the safety of any other person or to the
community, as provided in 18 U.S.C. § 3142(g); and

    (3)    The reduction is consistent with this policy statement. U.S.S.G. § 1B1.13.

Subsection (1)(B) is inapplicable. With respect to subsection (1)(A), which relates to

"extraordinary and compelling reasons" warranting a reduction, the Application Notes to Section

1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist.

*See id.* § 1B1.13 comment (n.1). The only relevant provision reads as follows:

    (A)    Medical Condition of the Defendant.—

> (i)    The defendant is suffering from a terminal illness (*i.e.*, a serious and
> advanced illness with an end of life trajectory). A specific prognosis of life
> expectancy (*i.e.*, a probability of death within a specific time period) is not
> required. Examples include metastatic solid-tumor cancer, amyotrophic
> lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

3

(ii)    The defendant is—

    (I)    suffering from a serious physical or medical condition,

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)    experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

A court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

As the proponent of the Motion, Jaber bears the burden of proving that "extraordinary and compelling reasons" exist and that he is entitled to the relief he seeks. *See, e.g., United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

### Jaber's Motion in the Bureau of Prisons

On April 2, 2020, Jaber filed a compassionate release request with the Acting Warden at FCI Coleman. On April 23, 2020, the BOP denied the request. *See* Govt Opposition, Exhibit B. Accordingly, Jaber has exhausted his administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A).

### Jaber's Motion Before this Court

Jaber argues that the Court should release him from custody because his age and underlying health conditions increase his risk of suffering a severe, and possibly, fatal complications if infected by COVID-19, the BOP is incapable of protecting inmates from

4

contracting the virus, and the BOP, generally, is incapable of taking care of his medical needs.

There is no dispute that the 65 years' old Jaber has coronary artery disease and hypertension, *see* Govt. Opposition, at 6-7, and Exhibit C (Jaber's BOP Medical Records), and that under current guidance from the Centers for Disease Control and Prevention ("CDC"), he has a heightened risk of suffering serious complications from COVID-19, should he contract the virus. *See* https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-at- increased-risk.html.

As for Jaber's contention that BOP is incapable of caring for his chronic health issues, his BOP medical records suggest that the medical staff at FCI Coleman-Medium have been providing him with adequate medical care, and that his medical condition is stable. *See Id.* (passim).

In regard to the risk of contracting COVID-19 at FCI Coleman-Medium: While prison officials there have fully implemented the BOP's national multi-phase action plan for combatting the virus (*see BOP COVID-19 Action Plan*, https://www.bop.gov/ resources/ news/20200313_covid-19.jsp., (periodic updates to plan omitted)), the virus has more than made its presence known in that facility. According to BOP website, there have been 431 COVID-19 tests administered since the Pandemic began, yielding 183 positive results, with 24 test results still pending. *See* https://www.bop.gov /coronavirus/ (last visited August 20, 2020). The facility currently has 78 confirmed active inmate cases of COVID-19 (out of a

5

total inmate population of nearly 1,500), and 32 confirmed active COVID-19 cases among staff.[2]

Accordingly, Jaber—by virtue of his age, poor heart health, and designation in a BOP facility with a not insignificant COVID-19 infection rate—has arguably met his burden of demonstrating an "extraordinary and compelling reason," *to be considered* for compassionate release. The analysis, however, does not end there.

In considering a compassionate release motion, the court must conduct a Section 3553(a) analysis. *See* 18 U.S.C. § 3582(c)(1)(A). The same sentencing factors that warranted the imposition of the original sentence of 15 years' imprisonment—including the seriousness of the defendant's crimes—remain in full force and demonstrate that a sentence reduction is not warranted.

Jaber's crimes are as serious as any that come before the Court. He worked with an array of criminal associates over an extended period to supply large quantities of military-grade weapons, as well as other support and resources, to a terrorist organization. Jaber was the driving force, the orchestrator, of the criminal venture. He recruited Fayad, El Merebi (a high-level Hizballah arms trafficker), and other co-conspirators to join the scheme; he was the point of contact for the confidential sources ("CSes"); and he met no fewer than nine different times in various countries with the CSes and co-conspirators in furtherance of the weapons, narcotics, and money-laundering transactions. Most significantly, in his relentless pursuit of profit, Jaber was prepared to broker and facilitate a multi-million dollar weapons deal aimed at furthering the

---

[2] After dealing with numerous compassionate release motions over the last several months, I have learned that BOP statistical reporting for a particular facility does not always comport with, and often understates the actual infection rate at that facility.

FARC's reign of terror in Colombia and killing of American soldiers. Jaber was instrumental in the negotiation of the weapons deal from start to finish, as he traveled to multiple countries to meet with prospective suppliers, and ultimately recruited and negotiated directly with Fayad. PSR ¶¶ 21-25. The military-grade weapons involved in the deal that Jaber brokered included surface-to-air missiles, rocket-propelled grenades, and assault rifles, and were worth over $8 million on the black market. PSR ¶¶ 21, 23, 35-39. And as the recorded meetings and calls summarized in the PSR make clear, Jaber fully understood that FARC guerillas would use those weapons against American forces. *See, e.g.*, PSR ¶¶ 20, 26(i), 35(ii).

As the Court stated at sentencing, Jaber "was fully willing to make sure that killers could buy the implements of killing." Ex. A at 33:11-13. Indeed, the Court remarked at sentencing that the defendant was fortunate that the material-support statute capped his exposure at 15 years, because the gravity of his conduct easily could support a higher sentence. *See id.* at 33:20-22 ("This crime is fully deserving of the maximum punishment the law allows. In this particular case, the defendant is lucky the statute mitigates."), 35:1-5 ("[W]hat you did was an extraordinarily reprehensible thing, and if I had the power, I would actually punish you rather more severely than the law allows me to, but there is a statutory maximum sentence here of 15 years.").

Nothing in Jaber's compassionate release motion has altered the Court's conclusion. Jaber makes a passionate plea for release in his present motion arguing that, given his age and cardiovascular disease, his current sentence is effectively a "life sentence." Mot. at 5. But I already considered that argument at sentencing; I explained to defense counsel making an equally impassioned argument for a lesser sentence that, in light of the seriousness of the

7

defendant's crimes, "[w]hile I hear you about Mr. Jaber's life expectancy," the defendant had

"made his own bed." *Id.* at 34:2-8. Ultimately, when fashioning the appropriate sentence, I

concluded:

> I have considered all of the Section 3553(a) factors. Given the nature of this
> offense and the circumstances under which it was committed, I believe that that
> outweighs any consideration of the history and the characteristics of the
> defendant, and that the need to punish this crime and to send a message that this
> sort of behavior will not be tolerated outweighs any other consideration set forth
> in the sentencing statute and informs my decision to impose a guidelines sentence.

*Id.* at 35:19-36:2. Nothing—not even the specter of COVID-19 at FCI Coleman-Medium—has

changed the Court's view.

The motion for compassionate release is denied.

Jaber's Furlough Request

The defendant's alternative request for an administrative furlough pursuant to 18 U.S.C.

§ 3622 is denied. The decision to furlough an inmate is solely within the purview of the BOP.

*See, United States v. Roberts*, No. 18 Cr. 528 (JMF), Dkt. 296 at 7-9 (S.D.N.Y. Apr. 8, 2020)

("[T]he decision of whether to grant [the defendant] a furlough under Section 3622 is committed

to sole discretion of the BOP. As virtually every court to consider the question appears to have

held, [t]he statute could not be clearer as to whom it vests with the authority to grant temporary

release [It] gives authority over temporary-release decisions to the Bureau of Prisons (BOP), not

the federal courts.") (collecting cases) (internal quotation marks omitted). And the Court declines

to make any recommendation regarding furlough.

8

This constitutes the decision and order of the Court.

Dated: August 25, 2020

_____

Colleen McMahon
Chief Judge

BY ECF TO ALL PARTIES