UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————x

UNITED STATES OF AMERICA

V.                                                        S1 13 CR 485 (CM)

FAOUZI JABER,

        Defendant.

———————————————————————x

### DECISION AND ORDER DENYING DEFENDANT'S RENEWED MOTION FOR COMPASSIONATE RELEASE

McMahon, J.:

    Faouzi Jaber pleaded guilty to conspiring to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B, and was sentenced to 15 years' imprisonment. Jaber has served about half of his sentence—his projected release date is January 15, 2027.

    Before the Court is Jaber's renewed motion for compassionate release. *See* Defendant's Renewed Motion for Compassionate Release, September 30, 2021, Docket. 75. Jaber claims—as he did in his original motion (*see* Defendant's Motion for Compassionate Release, August 25, 2020, Docket 66)—that (1) he has numerous health issues, including coronary artery disease, hypertension, and depression, that places him at high risk of suffering a severe outcome should he become infected with COVID-19, and (2) conditions at FCI Hazelton (where Jaber is currently being held) create an ideal environment for the transmission of COVID-19.

1

The Government opposes Jaber's renewed motion arguing, as it did in opposing his first compassionate release motion, that the motion should be denied because Jaber's conviction involved extremely serious criminal conduct, and the sentencing factors set forth at 18 U.S.C. § 3553(a) continue to support the 15-year sentence.

The motion is denied.

<u>Compassionate Release</u>

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release.[1] In the past, this Court—and

---

[1] "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See, e.g., United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992).

2

many of my district court colleagues—looked to United States Sentencing Guidelines § 1B1.13 (the applicable Guidelines section for sentencing reductions pursuant 18 U.S.C. § 3582(c)(1)(A)(i)), for guidance on what constituted "extraordinary and compelling circumstances."[2] That changed on September 25, 2020, when the United States Court of Appeals for the Second Circuit held that § 1B1.13 is not applicable to a motion brought by a defendant in the district court. *United States .v. Brooker* No. 19-32180-CR, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020). The Second Circuit reasoned that the language of § 1B1.13—language that has not been updated since the passing of the First Step Act—addressed only sentencing reduction motions initiated by the Bureau of Prisons. *Id.* In making clear that the district court was not constrained by the narrow grounds for granting compassionate release in § 1B1.13, the Second Circuit declared unequivocally that "district courts have discretion to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in

---

[2] The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See* § 1B1.13 comment (n.1). For example, the medical circumstances ground reads as follows:

(A)  Medical Condition of the Defendant—

    (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

    (ii)  The defendant is—
        (I)  suffering from a serious physical or medical condition,
        (II)  suffering from a serious functional or cognitive impairment, or
        (III)  experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

motions for compassionate release," and that "neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id* at *7.

What *Brooker* did not change, however, is the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

### Jaber Exhausted his Administrative Remedies in the Bureau of Prisons

On or about September 2, 2021 (subsequent to this Court's denial of defendant's first compassionate release motion), defendant filed a second compassionate release request with the Warden at FCI Hazelton in West Virginia, the BOP facility where he is currently housed. *See* Docket 75 at 3, 7, 21. On or about September 27, 2021, the BOP denied the defendant's request. *Id.* at 21.

Accordingly, Jaber has exhausted his administrative remedies, and the present motion for compassionate release is properly before the Court.

### The Motion Before the District Court

On August 25, 2020, the Court denied Jaber's fist compassionate release motion, concluding, among other things, that although the defendant, "by virtue of his age, poor heart health, and designation in a BOP facility with a not insignificant COVID-19 infection rate . . . has arguably met his burden of demonstrating an 'extraordinary and compelling reason, *to be considered* for compassionate release," "[t]he same sentencing

4

factors that warranted the imposition of the original sentence of 15 years' imprisonment—including the seriousness of the defendant's crimes—remain in full force and demonstrate that a sentence reduction is not warranted." *See* Court Decision, Docket 69 at 6.

Jaber's renewed motion for compassionate release identifies no new circumstance to cause the Court to question the conclusion it reached when it denied Jaber's first motion. On the contrary, the only new circumstances are that Jaber is now fully vaccinated against COVID-19 (*See* Defendant's BOP Medical Records, Govt. Ex. D at 83 (defendant received two doses of the Pfizer vaccine, on April 7 and April 28, 2021), and (2) the rate of COVID-19 infections at FCI Hazelton is far less than it was at FCI Coleman, where he was incarcerated when he made his fist motion.

Jaber's being fully vaccinated only weakens his compassionate release argument. As numerous courts in this District have concluded, the fact that a defendant is fully vaccinated weighs heavily against granting release. *See, e.g.*, *Jones*, 2021 WL 4120622, at *2 (denying compassionate release motion of defendant who suffered from underlying health conditions but was fully vaccinated, explaining that "the risk of COVID-19 for a vaccinated individual is substantially reduced to the point that a defendant will typically not be able to demonstrate extraordinary and compelling reasons after he has been vaccinated," and "[i]ndeed, recent data confirms that the COVID-19 vaccines dramatically reduce the risk of death or serious illness from the various variants of COVID-19, even the dreaded Delta Variant"); *United States v. Orlandez-Gamboa*, 99 Cr. 654 (CM), 2021 WL 2582077, at *3 (S.D.N.Y. June 23, 2021) (finding defendant had

5

failed to demonstrate extraordinary and compelling circumstances, even though he was in high-risk age group, because he was "fully vaccinated against COVID-19"); *United States v. Mena*, 16 Cr. 850 (ER), 2021 WL 2562442, at *3 (S.D.N.Y. June 23, 2021) ("Access to an approved COVID-19 vaccine generally counsels against compassionate release based on COVID risk, due to the strong evidence of the effectiveness of each of the vaccines."); *United States v. Santana*, 18 Cr. 865 (VEC), 2021 WL 1819683, at *2 (S.D.N.Y. May 6, 2021) (finding no extraordinary circumstances due to "the efficacy of the COVID vaccines, and specifically the Pfizer vaccine" and citing data showing Pfizer vaccine is 94% effective against COVID-19 hospitalization).

Of course, I cannot ignore the fact that the Omicron variant appears to be more resistant to the vaccines that have been developed, due to the nature of its mutation. However, recent studies have revealed that Omicron causes a less serious infection in most people, specifically sparing the lungs, while vaccination still provides excellent protection against the most severe consequences of even this new variant – death and extended hospitalization. *See* Studies Suggest Why Omicron Is Less Severe: It Spares the Lungshttps://www.nytimes.com/2021/12/31/health/covid-omicron-lung-cells.html. Moreover, given the speed with which Omicron is spreading through the unincarcerated population, I cannot say with any confidence that defendant would be safer on the outside than he is where he is.

In regard to the risk of contracting COVID-19 at FCI Hazelton: The facility currently has 7 confirmed active inmate cases of COVID-19 (out of a total inmate population of nearly 1,500), and no confirmed active COVID-19 cases among staff. The current

6

numbers at FCI Hazeton pale against the numbers that FCI Coleman-Medium was reporting when Jaber made his first motion: In August of 2020, FCI Coleman-Medium reported having 78 confirmed active inmate cases of COVID-19 (out of a total inmate population of nearly 1,500), and 32 confirmed active COVID-19 cases among staff.[3]

Accordingly, Jaber's health and COVID argument has only weakened since his last motion.

As for the § 3553(a) sentencing factors, they continue to militate overwhelmingly in favor of denying the defendant's Motion. The defendant was the driving force behind an international scheme to sell an arsenal of military-grade weapons to a terrorist group that he believed would be used to kill American soldiers in Colombia. Accordingly, early release is wholly unwarranted, even if Jaber were facing more severe health consequences than he is.

The motion for compassionate release is denied.

Dated: January 4, 2022

_____
Colleen McMahon
District Court Judge

---

[3] After dealing with numerous compassionate release motions over the last many months, I have learned that BOP statistical reporting for a particular facility does not always comport with, and often understates the actual infection rate at that facility. Indeed, the current snapshot is likely not capturing the effect of the the unfolding Omicron waive.